IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

AARON WATFORD,
   Plaintiff,

   v.                                        Civil Action No. 3:20cv676 (DJN)

MR. LEABOUGH, *et al.*,
   Defendants.

**MEMORANDUM OPINION**

Plaintiff Aaron Watford ("Plaintiff" or "Watford"), a Virginia inmate, brings this 42

U.S.C. § 1983[1] action alleging that Defendants Colonel Larry J. Leabough and Jail Officer Jevon

Dabney (collectively, "Defendants") violated his First,[2] Fifth,[3] Eighth[4] and Fourteenth

Amendment rights[5] during his incarceration at the Riverside Regional Jail.  The action proceeds

---

[1]       That statute provides, in pertinent part:

             Every person who, under color of any statute . . . of any State . . . subjects,
         or causes to be subjected, any citizen of the United States or other person within
         the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
         secured by the Constitution and laws, shall be liable to the party injured in an action
         at law . . . .

42 U.S.C. § 1983.

[2]       "Congress shall make no law . . . abridging the . . . the right of the people to peacefully to
assemble . . . ."  U.S. Const. amend. I.

[3]       "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or
limb . . . ."  U.S. Const. amend. V.

[4]       "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual
punishments inflicted."  U.S. Const. amend. VIII.

[5]       "No State shall . . . deprive any person of life, liberty, or property, without due process of
law . . . ."  U.S. Const. amend. XIV, § 1.

on Plaintiff's Particularized Complaint. ("Complaint," (ECF No. 16).)[6] The matter comes

before the Court on Defendants' Motion for Summary Judgment. (ECF No. 41.) Plaintiff has

filed a Response. (ECF No. 44.) For the reasons set forth below, the Motion for Summary

Judgment will be GRANTED, and Plaintiff's claims will be DISMISSED.

## I.    RELEVANT ALLEGATIONS AND CLAIMS

Plaintiff's claims stem from a security incident, where he and his cellmate assaulted

Defendant Dabney, and then Plaintiff impeded Defendant Dabney from entering the cell.

Plaintiff was subsequently placed in restricted housing and received institutional charges for his

actions. (ECF No. 16, at 1–2.) After his release, Plaintiff was placed in restricted housing for a

second time. (*Id.* at 2.) In his Complaint, Plaintiff demands relief on the following grounds:[7]

| | |
|---|---|
| Claim One: | "By placing [Watford] in SHU, Defendant Leabough subjected Plaintiff Watford to double jeopardy, punishing him twice for the same offense. . . . violat[ing] Plaintiff Watford's rights under the Fifth Amendment . . . ." (*Id.* at 5.) |
| Claim Two: | "Defendant Leabough subjected Plaintiff Watford to cruel and unusual punishment by depriving Watford out of cell exercise opportunities. . . . violat[ing] Plaintiff Watford's rights under the Eighth Amendment . . . ." (*Id.*) |
| Claim Three: | "Defendant Leabough placed Plaintiff in punitive confinement when Plaintiff Watford was not violating any rules or being disruptive, depriving Watford due process before and after the placement [in] punitive confinement . . . ." (*Id.* at 6.) |
| Claim Four: | Defendant Leabough "complete[ly] banned Watford's visitation" in (a) violation of the Eighth Amendment; and (b) Watford's "right to freedom of association" under the First Amendment. (*Id.* at 6–7.) |
| Claim Five: | "Defendant Dabney subjected Plaintiff Watford to cruel and unusual punishment by prevaricating the truth, having Watford placed in the SHU. . . . violat[ing] Plaintiff Watford's rights under the Eighth Amendment . . . ." (*Id.* at 7.) |

---

[6]    The Court employs the pagination assigned by the CM/ECF docketing system.

[7]    The Court corrects the capitalization in the quotations from Watford's submissions.

2

Plaintiff seeks declaratory, injunctive, and monetary relief.

## II.    STANDARD FOR SUMMARY JUDGMENT

The Court must grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility of informing the

Court of the basis for the motion and identifying the parts of the record which demonstrate the

absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation

marks omitted).  When the movant properly supports the motion, the nonmoving party must go

beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*

(quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

The relevant inquiry in a summary judgment analysis focuses on "whether the evidence

presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-

sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986).  In reviewing a motion for summary judgment, the Court must view the

facts in the light most favorable to the non-moving party.  *Id.* at 255.  Moreover, the Court

cannot weigh the evidence to enter a judgment, but simply must determine whether a genuine

issue for trial exists.  *Greater Balt. Ctr. for Pregnancy Concerns v. Mayor of Baltimore*, 721 F.3d

264, 283 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 249).

Once the moving party properly submits and supports a motion for summary judgment,

the opposing party has the burden of showing that a genuine dispute exists.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; instead, there must be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Indeed, the Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the non-moving party "must rely on more than conclusory allegations, 'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of some 'metaphysical doubt' concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, allows a reasonable factfinder to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

In support of their Motion for Summary Judgment, Defendants have submitted: (1) Plaintiff's Inmate Housing History (ECF No. 42–1); (2) a Disposition Notice from the Circuit Court of Hopewell, Virginia establishing Watford's conviction for second-degree murder and that he is serving an active sentence of twenty years of incarceration (ECF No. 42–2); (3) disciplinary records pertaining to the security incident on April 28, 2020 (ECF Nos. 42–3 through 42–6); (4) records from the Circuit Court of Prince George County, Virginia establishing that Plaintiff pled guilty to and was convicted of assault on a law enforcement officer after the

4

April 28, 2020 incident (ECF No. 42–7); (5) an incident report from August 26, 2020 (ECF No. 42–8); (6) and, an affidavit from Charlene R. Jones, a Lieutenant at Riverside Regional Jail ("RRJ") ("Jones Aff." ECF No. 42–9).

At this stage, the Court must assess whether Plaintiff "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). Because Plaintiff failed to swear to the contents of his Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (noting that unsworn argument does not constitute evidence for consideration on summary judgment). Moreover, although Plaintiff responded to the Motion for Summary Judgment (ECF No. 44), Plaintiff failed to submit an affidavit or any other evidence with his response.

Plaintiff's failure to present any admissible evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' affidavits in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Accordingly, the Court deems the following facts as established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Plaintiff.

## III.    UNDISPUTED FACTS

### A.    April 28, 2020 Incident and Institutional Convictions

Plaintiff first became incarcerated at RRJ on October 13, 2017. (ECF No. 42–1, at 1.) While in custody at RRJ, on January 15, 2020, Plaintiff was convicted of second-degree murder and sentenced to a twenty-year active term of incarceration by the Circuit Court of Hopewell,

Virginia. (ECF No. 42–2, at 1.)  As of April 28, 2020, RRJ assigned Plaintiff to Housing Unit 2-B, cell number 24, with James Reid as his cellmate. (ECF No. 42–3, at 1.)  On April 28, 2020, Reid became upset, because he did not receive his Ramadan meal and threw his tray at the cell door causing the tray to break into pieces. (*Id.*)  When Cpl. Mayes attempted to hand him the correct meal bag, Reid attempted to leave his cell, pushed Cpl. Mayes, and then struck "Cpl. Mayes in the face multiple times with a closed fist." (*Id.*)  Defendant Dabney attempted to help Cpl. Mayes but "Watford stood in front of [him] preventing [him] from entering the cell," and despite Defendant Dabney instructing him to move, Plaintiff told Defendant Dabney that "you [are] not going in there" and continued to block the cell. (*Id.*)  As a result of the incident, Plaintiff was transferred to a restricted housing unit on April 28, 2020. (*Id.*)

Plaintiff was subsequently charged with assaulting or instigating assault on another person/staff and failing to follow directions of staff causing a security breach. (*Id.*)  The following day, on April 29, 2020, Plaintiff received Notice of Disciplinary Hearing. (ECF No. 42–4, at 1.)  Plaintiff agreed that RRJ had informed him of the charges against him and his rights and that he understood his rights for the disciplinary hearing. (*Id.*)  During the disciplinary hearing on May 1, 2020, Plaintiff pled guilty to the charge of failing to follow directions of staff causing a security breach and was found guilty of the charge of assaulting or instigating assault on another person/staff. (ECF No. 42–5, at 1–2.)  As a result of the institutional convictions, Plaintiff received sanctions of a loss of "good time" and "30 days lockdown" under disciplinary detention status. (*Id.* at 2; Jones Aff. ¶ 13.)

Plaintiff remained in restricted housing for the disciplinary conviction for thirty days, until May 28, 2020, at which time he returned to general population housing. (*See* ECF No. 16, at 2; ECF No. 42–1, at 1.)  At no time after May 28, 2020, was Plaintiff housed in restrictive housing as an administrative punishment. (Jones Aff. ¶ 24.)

**B.      July 2020 Placement in Restrictive Housing and Subsequent Criminal Conviction**

On July 10, 2020, RRJ removed Plaintiff from the general population and placed him in the "high security housing unit" under "'restricted confinement' status rather than for 'disciplinary detention' status." (Jones Aff. ¶ 14.) "Restricted confinement is utilized for the safety of RRJ personnel for inmates that pose a safety hazard to either their fellow inmates or RRJ personnel. [Watford] was placed in the high security housing unit as a result of his history of dangerous and disruptive conduct, including the April 28, 2020 assault." (*Id.*) On July 16, 2020, Plaintiff was indicted on the charge of Assault on a Law Enforcement/Department of Corrections Official as a principle in the second degree in the Circuit Court for Prince George County. (ECF No. 42–7, at 1.) Plaintiff pled guilty, and on November 12, 2020, the Circuit Court sentenced him to an active term of one year and nine months of incarceration. (*Id.*)

**C.      August 26, 2020 Incident**

While confined in restricted housing awaiting his criminal proceedings in Prince George County, on August 26, 2020, Plaintiff was involved in another security incident. (ECF No. 42–8, at 1.) Officers Bryant and Lawson let Plaintiff out of his cell for his one hour of recreation. (*Id.*) At the end of the hour, Plaintiff "closed his assigned cell door, approached [Officer Bryant] and stated that he was not locking down until he received a phone call in the office because of a death in his family." (*Id.*) Officer Bryant warned Plaintiff that this would lead to a disciplinary charge and Plaintiff "stated that he did not care and was still refusing to lockdown." (*Id.*) Sergeant Sample ultimately convinced Plaintiff to lockdown without further incident. (*Id.*) As a result, Plaintiff faced charges of four major infractions. (*Id.*)[8] From August 26, 2020 until

---

[8]      It is unclear from the record whether he was convicted of these charges.

February 2021, as a result of all of the security incidents and for the safety of RRJ staff, Plaintiff remained in restricted housing. (Jones Aff. ¶¶ 16–18.)

### D.    Privileges in Restrictive Housing for Plaintiff

Beginning in March 2020, and continuing through the present, RRJ permitted no visitors for any inmate due to the ongoing COVID-19 pandemic. (*Id.* ¶ 21.) "At all relevant times, [Watford] was permitted at least one hour of exercise outside of his cell, including access to an outdoor area, five days out of every week; phone privileges as a behavioral incentive that [Watford] earned; showers up to five (5) times per week; and access to mental health and physical care." (*Id.* ¶ 22.) As of August 26, 2020, Plaintiff "was permitted to (and did) earn extra incentives such as social phone calls, one half hour of extra recreation time, additional personal reading material, and a radio." (*Id.* ¶ 17.) Plaintiff was transferred from RRJ on March 11, 2021. (*Id.* ¶ 19.) Jones avers that, despite Plaintiff's characterization of restrictive housing as the SHU or "New Supermax SHU," no such housing facility exists. (*Id.* ¶ 25.)

### IV.    ANALYSIS

### A.    Double Jeopardy

In Claim One, Plaintiff contends that, "[b]y placing [Watford] in [restricted housing], Defendant Leabough subjected Plaintiff Watford to double jeopardy, punishing him twice for the same offense. . . .  violat[ing] Plaintiff Watford's rights under the Fifth Amendment . . . ." (ECF No. 16, at 5.) Although Plaintiff does not explain which detention in restrictive housing that he challenges, the Court assumes that Plaintiff argues that his second placement in restrictive housing on July 10, 2020, constituted a second punishment, because he had already served his thirty days imposed for institutional convictions. However, as the record establishes, Plaintiff's second placement in restrictive housing did not constitute punishment for an institutional charge. Rather, RRJ placed him in restrictive housing, because he was deemed a security risk as a result

8

of his dangerous and disruptive conduct and because he was a danger to RRJ staff and fellow inmates. (Jones Aff. ¶ 14.)

Even if Plaintiff's second detention in restrictive housing could constitute a second punishment, Plaintiff's double jeopardy claim lacks merit. Simply put, double jeopardy protections do not apply in the context of prison disciplinary proceedings. *See Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) ("Because the Double Jeopardy clause only applies to proceedings that are 'essentially criminal in nature' . . . , 'it is well established that prison disciplinary sanctions'—such as administrative segregation—'do not implicate' double jeopardy protections." (citations omitted)); *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000) (holding that double jeopardy is inapplicable "because jeopardy does not attach at prison disciplinary or classification hearings"); *Coles v. Washington*, 2012 WL 443543, at *4 (E.D. Va. Feb. 10, 2012) ("Thus, courts have concluded the Double Jeopardy Clause does not apply to prison disciplinary actions."). This holds true, because "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due to a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrisey v. Brewer*, 408 U.S. 471, 488 (1972)). Because Plaintiff's double jeopardy claim lacks merit and is legally frivolous, Claim One will be DISMISSED.

## B. Eighth Amendment Claims (Claims Two, Four (a), and Five)

In Claims Two and Four (a), Plaintiff contends that Defendant Leabough "subjected Plaintiff Watford to cruel and unusual punishment" in violation of the Eighth Amendment "by depriving Watford out of cell exercise opportunities" and by "complete[ly] ban[ning] Watford's visitation." (ECF No. 16, at 5–6.) Plaintiff's allegations appear to derive from his second stay in restrictive housing beginning on July 10, 2020. (*See id.* at 3–4.) Plaintiff alleges that he "has

9

"experienced psychological harm, emotional distress, and physical deterioration," has attempted suicide twice, and has sustained weight loss. (*Id.* at 4.)

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Under the objective prong for an Eighth Amendment claim challenging the conditions of his confinement, the inmate must demonstrate that the deprivation complained of rose to the level of extreme and amounted to more than the "routine discomfort" that constitutes "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson*, 503 U.S. at 9). The resulting harm to the inmate becomes particularly pertinent in assessing whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered

10

serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.*

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Furthermore, when the prison conditions complained of result from disciplinary sanctions, the "deliberate indifference standard must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns."

11

*Trammell v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003).  The Court must determine whether the

deprivation order "was reasonably calculated to restore prison discipline and security and, in

that . . . context, whether the officials were deliberately indifferent to [the plaintiff's] health and

safety."  *Id.*  While this standard still forbids prison officials from deliberately imposing

conditions that pose a substantial risk of serious harm to an inmate's health, it acknowledges

> that when a prison is facing a recalcitrant and uncontrollable inmate, it has a freer
> hand to take steps to impose discipline and ensure the inmate's own safety without
> running afoul of the Eighth Amendment.  What may be considered cruel and
> unusual in one case may be acceptable in another, so long as the conditions imposed
> have some legitimate coercive and penological purpose and are linked to correcting
> the behavior in question.

*Bowers v. Pollard*, 602 F. Supp. 2d 977, 989 (E.D. Wis.), *aff'd*, 345 F. App'x 191 (7th Cir.

2009).

Given these parameters, Plaintiff fails to satisfy either the objective or subjective prongs

for his Eighth Amendment claims.  First, with respect to his claim that RRJ denied him all

visitation, the record establishes that RRJ permitted no visitation for any inmate from March

2020, until after Plaintiff's release due to the COVID-19 pandemic.  (Jones Aff. ¶ 21.)  Thus,

Plaintiff did not face this condition for being housed in restrictive housing.  Rather, it applied to

all inmates.  Moreover, Plaintiff fails to establish that he "suffered serious or significant physical

or mental injury as a result of" the lack of visitation permitted during that time.  *Strickler*, 989

F.2d at 1381.  Plaintiff also fails to demonstrate that Defendant Leabough knew of and

disregarded a substantial risk of harm to Plaintiff by not allowing him visitation.  To the

contrary, RRJ imposed the restriction on visitation to protect the inmate population from the

spread of the COVID-19 virus.  Accordingly, Plaintiff fails to demonstrate that by not allowing

visitation, Defendant Leabough acted with deliberate indifference to Plaintiff's Eighth

Amendment rights.  Accordingly, Claim Four (a) lacks merit and will be DISMISSED.

In Claim Two, Plaintiff contends that Defendant Leabough "subjected Plaintiff Watford to cruel and unusual punishment" in violation of the Eighth Amendment "by depriving Watford out of cell exercise opportunities"[9] (ECF No. 16, at 5.)  However, the uncontroverted record establishes that RRJ permitted Plaintiff at least one hour of exercise outside of his cell throughout his detention at RRJ.  (Jones Aff. ¶ 22.)  How Plaintiff chose to use this time out of his cell remained his choice, but the record establishes that he could have used this time to exercise.[10]  Accordingly, this claim fails from the start, because RRJ did not deny Plaintiff out of cell exercise.

To the extent that Plaintiff desired outdoor exercise, Plaintiff has failed to establish that he "suffered serious or significant physical or mental injury as a result of" any restriction on outdoor exercise while in restrictive housing.  *Strickler*, 989 F.2d at 1381.  Indeed, Plaintiff has failed to advance any evidence that he suffered any injury from the lack of outdoor exercise except his conclusory statement that he became lethargic.[11]  (ECF No. 16, at 3.)  Rather, Plaintiff establishes nothing more than a routine discomfort, not an extreme deprivation.  Moreover, the Constitution does not mandate outdoor exercise.  *See Norbert v. Cty. and Cnty. of San Francisco*, 10 F.4th 918, 929–34 (9th Cir. 2021) (citations omitted) (surveying cases and explaining that the

---

[9]     For his claim pertaining to exercise restrictions, Watford's allegations are entirely inconsistent.  In his statement of Claim Two, Watford contends that he was denied "out of cell exercises."  (ECF No. 16, at 5.)  In the body of his Complaint, Watford alleges that that while in restrictive housing he was not "afforded the opportunity to outside rec or out of cell exercise." (ECF No. 16, at 3.)  However, in the next sentence, he contradicts himself and complains that he was "only allowed 1 hour of in-pod rec (5) days a week to shower and use the phone."  (*Id.*)

[10]    Watford states that "upon information and belief, Riverside Regional policy prohibits exercise in the dayroom area."  (ECF No. 16, at 3.)  Watford points to no evidence to support this speculation.

[11]    Watford complains about many other physical and mental ailments that he allegedly suffered, but he links those allegations generally to the fact of being housed in restrictive housing and to being housed with other inmates, not the denial of outside exercise.  (*See* ECF No. 16, at 4.)  Watford did not allege a claim challenging the conditions of restrictive housing generally.

Constitution does not require outdoor exercise when other opportunities for physical exercise are available); *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (explaining that "there is a significant difference between a lack of outdoor recreation and an inability to exercise," and that only alleging a lack of outdoor exercise fails to state a sufficiently serious constitutional deprivation); *Wilkerson v. Maggio*, 703 F.2d 909, 911–12 (5th Cir. 1983) (finding "one hour a day of exercise on the indoor tier satisfied the constitutional minimum" for an inmate who was not permitted outdoor recreation for a seven-year period). Accordingly, Plaintiff fails to establish that a lack of outdoor exercise while in restrictive housing amounted to cruel and unusual punishment. Claim Two lacks merit and will be DISMISSED.

In Claim Five, Plaintiff contends that, "Defendant Dabney subjected Plaintiff Watford to cruel and unusual punishment by prevaricating the truth, having Watford placed in the SHU. . . . violat[ing] Plaintiff Watford's rights under the Eighth Amendment . . . ." (ECF No. 16, at 7.) The Court fails to discern, and Plaintiff fails to explain, how Defendant Dabney violated Plaintiff's Eighth Amendment rights by providing testimony about the incident on August 28, 2020. Accordingly, Claim Five lacks merit and will be DISMISSED. To the extent that Plaintiff intends to argue that he was falsely charged and convicted of disciplinary offenses, the Court will analyze that contention as a due process claim.

### C.    Due Process Claims

In Claim Three, Plaintiff argues that: "Defendant Leabough placed Plaintiff in punitive confinement when Plaintiff Watford was not violating any rules or being disruptive, depriving Watford due process before and after the placement [in] punitive confinement . . . ." (ECF No. 16, at 6.) Once again, Plaintiff does not specify whether he challenges his first or second placement in restrictive housing. However, it appears that this claim stems from his second placement in restrictive housing on July 10, 2020. (*See id.* at 2.) Moreover, Watford does not

14

articulate specifically why he believes this second placement in restrictive housing violated his due process rights.

### 1.     The Constitution Fails to Confer a Liberty Interest in Avoiding Placement in Restrictive Housing

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim calls for the Court to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). However, "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Thus, Plaintiff cannot demonstrate that the Constitution grants him a liberty interest in avoiding his placement in restrictive housing.

### 2.     Analysis of State-Created Liberty Interests

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Puranda v. Johnson*, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint that the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that

Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (omission in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 280 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). The United States Court of Appeals for the Fourth Circuit has observed that, "[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to confinement in the general population and later transferred to security detention." *Id.* at 528–29 (citing *Prieto*, 780 F.3d at 252).

The Court must therefore consider whether the conditions of Plaintiff's confinement in restrictive housing imposed an atypical and substantial hardship in relation to the ordinary incidents of prison life. The Supreme Court's decision in *Wilkinson* provides guidance for this analysis. In *Wilkinson*, the Court considered whether Ohio inmates had a protected liberty interest in avoiding assignment to the Ohio State Penitentiary ("OSP"), a "Supermax" facility, and, if so, what process was due under the Fourteenth Amendment before assigning inmates to OSP. 545 U.S. at 213. With respect to the conditions at OSP, the Court noted:

> Conditions at OSP are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units. The latter are themselves a highly restrictive form of solitary confinement. In OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the

16

one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.

Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.

Aside from the severity of the conditions, placement at OSP is for an indefinite period of time, limited only by an inmate's sentence. For an inmate serving a life sentence, there is no indication how long he may be incarcerated at OSP once assigned there. Inmates otherwise eligible for parole lose their eligibility while incarcerated at OSP.

*Id.* at 214–15 (internal citations omitted). Moreover, after an initial thirty-day review, an inmate's placement at OSP was "reviewed just annually." *Id.* at 224. The Supreme Court concluded that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* Therefore, inmates in Ohio "ha[d] a liberty interest in avoiding assignment to OSP." *Id.* (citing *Sandin*, 515 U.S. at 483).

Plaintiff has supplied no evidence with respect to the conditions of prison life in restrictive housing and how those differed from the conditions in general population. Plaintiff fails to put forth any evidence regarding the conditions in restrictive housing. At most, Plaintiff alleges that he could not exercise outdoors or see visitors, a measure which applied equally to everyone in the RRJ due to the COVID-19 pandemic. Plaintiff certainly fails to demonstrate, as he must, that those conditions rose to the level of the harshness of the conditions described in *Wilkinson* such that a State might conceivably intend to create a liberty interest in avoiding the conditions. Furthermore, Plaintiff fails to direct the Court to any state statutes or regulations that create a liberty interest in avoiding restrictive housing. *Puranda*, 2009 WL 3175629, at *4.

17

Because Plaintiff fails to demonstrate that he enjoyed a protected liberty interest in avoiding restrictive housing, Claim Three will be DISMISSED.

### 3.    Claim Five

Although the Court has already dismissed Plaintiff's Eighth Amendment claim alleged in Claim Five, the Court nevertheless generally construes Plaintiff to argue that Defendant Dabney violated Plaintiff's due process rights "by prevaricating the truth" and "having Watford placed in the SHU. . . ." (ECF No. 16, at 7.)  Plaintiff fails to provide any further explanation of this claim.  In his Response, Plaintiff, for the first time, contends that Defendant Dabney "made up the story about me stopping him." (ECF No. 44, at 1.)  Plaintiff points to no evidence to support his conclusory statement that Defendant Dabney lied about Plaintiff stopping him from entering the cell.  To the contrary, a disciplinary hearings officer, and the Circuit Court for Prince George County after Plaintiff's guilty plea, found that sufficient evidence existed to find that Plaintiff engaged in this behavior.  Because Plaintiff fails to demonstrate that Defendant Dabney violated his due process rights, Claim Five will be DISMISSED.

### D.    First Amendment Claim (Claim Four (b))

In Claim Four (b), Plaintiff contends that Defendant Leabough "complete[ly] banned Watford's visitation" in violation of Watford's "right to freedom of association" under the First Amendment. (ECF No. 16, at 6–7.)  "[T]he 'freedom of association is among the rights least compatible with incarceration,' *Overton* [*v. Bazzetta*, 539 U.S. 126, 131 (2003)], because '[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution.'" *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021) (citing *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 126 (1977)).  Nevertheless, the Court need not define the exact level of associational rights retained by inmates in Virginia, because "even those rights that do survive incarceration are afforded less protection by the

18

Constitution than the rights of free citizens." *Id.* at 242. Here, Defendant Leabough's restriction on Plaintiff's associational rights passes constitutional muster under *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

*Turner* reconciled the principles that inmates retain certain important constitutional protections with the deference owed to prison administrators "by holding that restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (internal citation and quotation marks omitted). In assessing the reasonableness of a regulation, courts must consider (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there existed an "absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90 (internal quotation marks omitted). Significantly, in conducting this inquiry, "[t]he burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132 (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Jones*, 433 U.S. at 128).

As a preliminary matter, Plaintiff was released from RRJ on March 11, 2021, so he is no longer subject to Defendant Leabough's ban on visitation. Moreover, Plaintiff fails to demonstrate that Defendant Leabough violated his First Amendment rights. First, a limitation or ban on visitation during a global pandemic promotes the rational penological objectives of maintaining prison security and inmate and staff safety. Second, Plaintiff had alternative means of associating or communicating with his family, including by calling or writing letters. Finally,

the last two factors favor the reasonableness of Defendant Leabough's restriction on visitation. Plaintiff fails to identify an accommodation that he desired, other than for the RRJ to allow him to have visitors. Lastly, Plaintiff does not suggest any ready alternatives existed to the prohibition on visitation. *See Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004) ("Had [plaintiff] offered evidence as to the feasibility and minimum institutional effect of a less restrictive visitation policy, this would be a closer case.").[12] Because Plaintiff fails to establish a violation of his First Amendment right to association, Claim Four (b) will be DISMISSED.

## V.   REQUEST FOR INJUNCTIVE RELIEF

Plaintiff seeks injunctive relief in the form of "ordering Defendant Leabough to release Plaintiff Watford from the SHU and to cease violating his rights." (ECF No. 16, at 8 (capitalization corrected).) However, "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Plaintiff is now incarcerated at Greensville Correctional Center. Accordingly, Plaintiff's claim for injunctive relief will be DISMISSED AS MOOT.

---

[12]   In his unsworn Response to the Motion for Summary Judgment, for the first time, Watford states that he was not permitted to have *video* visitation with his family although inmates in general population were permitted to do so. (ECF No. 44, at 3.) Watford has put forth no evidence to support his allegation, as he must at this juncture. Even if the Court were to assume as true that inmates in general population were permitted to have video visitation with family, and Watford, who was housed in restrictive housing, was not, Watford still fails to demonstrate that his right to association was violated. Watford fails to establish that a policy prohibiting video visitation for inmates in restrictive housing was unreasonable, or that there are any reasonable alternatives to that policy.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 41) will be GRANTED.  Plaintiff's claim for injunctive relief will be DISMISSED AS MOOT. Plaintiff's Motion for Summary Judgment (ECF No. 31) will be DENIED.[13]  The action will also be DISMISSED.

An appropriate order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Plaintiff and all counsel of record.

                                          /s/
                                    _____
                                    David J. Novak
                                    United States District Judge

Richmond, Virginia
Dated:   February 7, 2022

_____
[13]      Plaintiff's Motion for Summary Judgment constitutes nothing more than a request for the Court to find in his favor.

21